122 P.3d 131 (2005)
202 Or. App. 360
Lawrence BECK; Barbara Hutchinson; Thomas S. Brennan; Gayle I. Tokumoto; Alice Sayre; Mark Gould; Rose-Marie Barbeau-Quinn; Abby Gail Layton; Kathleen Root; Craig Rowland; A.P. Di Benedetto; Deborah Wheeler; Brian Dettling; Joseph P. Sonderleiter; and Carol A. Sonderleiter, Appellants,
v.
CITY OF PORTLAND, Respondent.
0209-09048; A120474.
Court of Appeals of Oregon.
Argued and Submitted February 11, 2004.
Decided October 26, 2005.
*132 William C. Cox, Portland, argued the cause for appellants. With him on the briefs was Gary P. Shepherd.
Tracy P. Reeve, Portland, argued the cause and filed the brief for respondent.
Bruce H. Cahn, Portland, argued the cause for amicus curiae Oregon Health & Science University. With him on the brief were Stephen T. Janik and Ball Janik LLP.
Before LANDAU, Presiding Judge, and ARMSTRONG, Judge, and BARRON, Judge pro tempore.
ARMSTRONG, J.
Plaintiffs appeal from a judgment dismissing their claim for declaratory relief. ORS 28.010; ORCP 21 A.[1] Defendant filed a motion to dismiss plaintiffs' claim for lack of subject matter jurisdiction and for failure to state a claim. The trial court granted the motion. We affirm.
The case concerns defendant City of Portland's development plans for Marquam Hill and the North Macadam District of Portland. Plaintiffs own property on Gibbs Street in Portland. In September 2002, plaintiffs brought an action for a declaratory judgment, alleging, in part, that,
"[t]hrough Ordinance 176742 and related planning documents, the City of Portland has set the framework to permit an aerial tram to be located above Gibbs Street. The aerial tram is to connect the North Macadam District with Oregon Health Sciences University (OHSU)."
Plaintiffs requested a declaration "that (1) they own the real property over Gibbs Street in the City of Portland and (2) permitting an aerial tram to be located above Gibbs Street and on plaintiffs' property would require the payment of just compensation" under the state and federal constitutions.
Ordinance 176742 adopts and implements the "Marquam Hill Plan." The ordinance states that the Marquam Hill Plan "includes policies and regulations that allow institutional expansion on Marquam Hill, policies that support additional institutional expansion in the North Macadam District and a policy that establishes a Science and Technology Quarter encompassing both locations[.]" The ordinance also states that "a suspended cable transportation system is needed and appropriate to connect Marquam Hill with North Macadam." However, it contains this caveat:
"[T]he Council expressly notes that the Marquam Hill Plan does not identify what kind of suspended cable transportation system, if any, is most appropriate to connect Marquam Hill with the North Macadam District or other areas of the City. While the Marquam Hill Plan and the implementing Comprehensive Plan policies and Zoning Code amendments encourage a *133 suspended cable transportation system to be considered as a transportation option, they reserve for the future the determination of what kind of system, if any, should actually be developed."
(Emphasis in original.)
Defendant moved to dismiss plaintiffs' claim for declaratory relief arguing that: (1) the trial court lacked jurisdiction to hear the complaint, because it concerned a "land use decision" as defined in ORS 197.015(10) and, therefore, the Land Use Board of Appeals (LUBA) had either exclusive or primary jurisdiction of the case; and (2) the complaint did not state a justiciable controversy, because it was not yet ripe.[2] The trial court granted defendant's motion and dismissed plaintiffs' complaint for declaratory relief.
On appeal, plaintiffs assign error to the court's dismissal of their complaint. They argue that their action is not intended to review a land use decision and, therefore, that LUBA does not have exclusive or primary jurisdiction of their case. Moreover, they argue that their case presents a justiciable controversy because it asks the court to declare the rights between competing property interests along Gibbs Street.
We need not decide whether LUBA had exclusive or primary jurisdiction of this matter because we conclude that the trial court lacked jurisdiction of plaintiffs' claim for declaratory relief on the ground that it was not ripe and, hence, was not justiciable.
In addition to the justiciability requirements imposed by Article VII (Amended), section 1, of the Oregon Constitution, the legislature may impose statutory justiciability requirements. For example, it may impose statutory standing requirements, as it has done in numerous statutes, including ORS 183.480 and ORS 536.075. See generally WaterWatch v. Water Resources Commission, 193 Or.App. 87, 91-92, 88 P.3d 327 (2004), vac'd and rem'd on other grounds, 339 Or. 275, 119 P.3d 221 (2005) (discussing the statutory standing requirements of those statutes). A court should address the statutory justiciability requirements, if any, before reaching the question of constitutional justiciability. US West Communications v. City of Eugene, 336 Or. 181, 191, 81 P.3d 702 (2003).
In US West Communications, the Oregon Supreme Court explained that the declaratory judgment statutes, ORS 28.010 to 28.160, have statutory justiciability requirements. Id. at 191 n. 12, 81 P.3d 702. Specifically, the court construed ORS 28.020. That provision authorizes those "whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract or franchise" to seek a declaratory judgment. ORS 28.020 (emphasis added). The Supreme Court concluded that "the legislature's use of the present tense phrase `are affected' implies [that] the controversy must involve a dispute based on present facts rather than on contingent or hypothetical events." US West Communications, 336 Or. at 191, 81 P.3d 702. Hence, ORS 28.020 codifies a ripeness requirement within the declaratory judgment statute, independent of the constitutional requirement. Therefore, just as the court did in US West Communications, we address the nonconstitutional ripeness question before the constitutional question.
However, before we reach that question, we must determine whether the justiciability requirement in ORS 28.020 is a jurisdictional requirement or a requirement that must be met to state a declaratory judgment claim. We must do so because the answer to that question determines the scope of our review. This case was dismissed in response to defendant's motion to dismiss. Defendant made arguments under both ORCP 21 A(1), questioning the court's subject matter jurisdiction, and ORCP 21 A(8), asserting that the complaint fails to state ultimate facts that constitute a claim. Our review of a ruling under ORCP 21 A(8) is based solely on the allegations in the complaint. Mark v. Dept. of Fish and Wildlife, 158 Or.App. 355, 357 n. 1, 974 P.2d 716, rev. den., 329 Or. 479, 994 P.2d 127 (1999).
*134 However, on a motion to dismiss for lack of subject matter jurisdiction under ORCP 21 A(1), if
"the facts constituting such [a] defense[] do not appear on the face of the pleading and matters outside the pleading, including affidavits, declarations and other evidence, are presented to the court, all parties shall be given a reasonable opportunity to present affidavits, declarations and other evidence, and the court may determine the existence or nonexistence of the facts supporting such defense or may defer such determination until further discovery or until trial on the merits."
Consequently, a court may consider evidence beyond the allegations in the pleadings to determine whether it has subject matter jurisdiction of a case. In many cases, subject matter jurisdiction may not turn on factual determinations. But in some cases the question turns on extant facts, such as the determination as to whether a case is ripe for adjudication. Thus, if the statutory justiciability question presented by this case is jurisdictional, then we may consider the evidence and affidavits that were submitted to the court by the parties. If not, then our review is limited to the complaint.
We conclude that the justiciability requirement in ORS 28.020 is a jurisdictional requirement for four reasons. First, in US West Communications, the Supreme Court raised the statutory ripeness issue on its own, feeling obliged to do so. 336 Or. at 190, 81 P.3d 702 (citing Oregon Medical Association v. Rawls, 281 Or. 293, 296, 574 P.2d 1103 (1978), for the proposition that courts have an independent obligation to determine whether an issue is justiciable). Only a jurisdictional question would have triggered such an obligation on the facts of US West Communications.
Second, the Supreme Court's analysis of the ripeness question in US West Communications applied the test for ripeness set out in Brown v. Oregon State Bar, 293 Or. 446, 648 P.2d 1289 (1982), and Cummings Constr. v. School Dist. No. 9, 242 Or. 106, 408 P.2d 80 (1965), two cases in which the court explicitly identified ripeness as a jurisdictional issue. See Brown, 293 Or. at 449-50, 648 P.2d 1289 (describing justiciability as a jurisdictional requisite); Cummings Constr., 242 Or. at 109, 408 P.2d 80 (explaining that "courts do not have jurisdiction to entertain a declaratory judgment action requesting the interpretation of a statute or a declaration of one's rights thereunder unless there is a `justiciable controversy' between the parties"). Admittedly, the court in Brown based its conclusion that justiciability is jurisdictional in part on constitutional grounds, 293 Or. at 449, 648 P.2d 1289, and Cummings Constr. cited Oregon Cry. Mfgs. Ass'n v. White, 159 Or. 99, 78 P.2d 572 (1938)a case based in part on the constitutional limits on judicial poweras authority for its similar conclusion. See also Utsey v. Coos County, 176 Or.App. 524, 536-37, 547, 32 P.3d 933 (2001), rev dismissed as moot, 335 Or. 217, 65 P.3d 1109 (2003) (treating Brown, Cummings Constr., and Oregon Cry. Mfgs. Ass'n as having been decided on constitutional grounds). However, Brown, Cummings Constr., and Oregon Cry. Mfgs. Ass'n all discussed the version of ORS 28.020 that was applicable at the time, and all of the decisions were based, in part, on the statute. As the Supreme Court noted in US West Communications, it "has not always specified whether its [justiciability] decision[s] rested on a sub-constitutional or on a constitutional basis." 336 Or. at 191 n. 12, 81 P.3d 702. Because Brown, Cummings Constr., and Oregon Cry. Mfgs. Ass'n all relied on the statute, in part, to reach the conclusion that justiciability is jurisdictional, the reliance on the constitution in those cases is of no import. Whether based in the constitution or in a statute, the doctrine of justiciability is jurisdictional.
The third reason that we reach that conclusion is that it is consistent with the ripeness doctrine that we articulated in Coast Range Conifers v. Board of Forestry, 192 Or.App. 126, 129, 83 P.3d 966 (2004), rev'd on other grounds, 339 Or. 136, 117 P.3d 990 (2005). In Coast Range Conifers, we observed that
"[t]he term `ripeness' tends to be used somewhat loosely. Sometimes, it is used to refer to an aspect of the doctrine of justiciability, specifically, the requirement that there be an actual, as opposed to a *135 hypothetical, injury to the individual invoking the judicial power. * * * In that sense, ripeness is an issue that is jurisdictional in nature and may be raised at any time. * * *
"Sometimes, the term is used more broadly to assert that the complaining party has failed to allege or prove an element of the particular claim involved. In Boise Cascade Corp. v. Board of Forestry, 186 Or.App. 291, 297, 63 P.3d 598, rev. den., 335 Or. 578, 74 P.3d 112, cert. den., 540 U.S. 1075, 124 S.Ct. 940, 157 L.Ed.2d 746 (2003), the state asserted for the first time on appeal that the plaintiff's Fifth Amendment regulatory takings claim was not `ripe' because the plaintiff had failed to establish that Article I, section 18, of the state constitution did not afford it a remedy. We concluded that the argument was, `in essence, a defense of failure to state ultimate facts sufficient to constitute a claim.' Id. As such, we concluded, it could not be raised for the first time on appeal."
Id. at 129, 83 P.3d 966 (citations omitted). Here, as discussed in more detail below, defendant argues that plaintiffs' claim for declaratory relief is not ripe because defendant has not yet decided to align an aerial tram along Gibbs Street and, indeed, may yet decide not to construct a tram at all. That argument is of the first sort we identified in Coast Range Conifers; that is, it alleges that something more must be done in order to render plaintiffs' claim ripe. As such, it is jurisdictional.
Finally, even in those cases in which we have addressed the justiciability of a claim for declaratory relief in the context of a motion to dismiss for failure to state a claim, we were, in fact, addressing justiciability as a jurisdictional question. That is made clear in Poddar v. Clatsop County, 167 Or.App. 162, 2 P.3d 929, rev. den., 331 Or. 193, 10 P.3d 944 (2000). In Poddar, the defendant filed a motion to dismiss under ORCP 21 A(8) for failure to state a claim, arguing that the plaintiff's claims were not justiciable. The court denied that motion but subsequently granted the defendant's motion for summary judgment. The plaintiff appealed, but the defendant did not cross-appeal and assign error to the trial court's denial of its motion to dismiss. Nonetheless, we concluded that, despite the defendant's abandonment of its justiciability argument on appeal, we were obliged to address the issue on our own "because it affect[ed] the trial court's jurisdiction to enter the judgments." Id. at 164, 2 P.3d 929.[3] Thus, where a defendant brings a motion to dismiss a claim for declaratory relief for failure to state a claim on the ground that the claim is not justiciable, the defendant is, in fact, asserting that the trial court lacks subject matter jurisdiction, which presents an issue under ORCP 21 A(1) rather than ORCP 21 A(8).
Because defendant's ripeness argument is properly understood as a challenge to the trial court's subject matter jurisdiction, our review of the justiciability of plaintiffs' claim is not limited to plaintiffs' complaint. Instead, under ORCP 21, we may consider evidence and affidavits submitted to the trial court by the parties to determine whether plaintiffs' claim was ripe under the declaratory judgment statute.
Defendant attached to its motion to dismiss an affidavit from its attorney with three exhibits, as it was permitted to do by ORCP 21 A. Only one of the attached exhibits relates to defendant's ripeness argument; the other two were in support of defendant's argument that there was another action pending between the parties, which is not at issue here. The relevant exhibit is a copy of Ordinance 176742. That ordinance is the ordinance that plaintiffs alleged "set the framework" for the construction of the tram above Gibbs Street. As noted above, although the ordinance discusses the potential construction of an aerial tram, it also includes this important caveat:
"[T]he Council expressly notes that the Marquam Hill Plan does not identify what kind of suspended cable transportation system, if any, is most appropriate to connect Marquam Hill with the North Macadam District or other areas of the City. While the Marquam Hill Plan and the *136 implementing Comprehensive Plan policies and Zoning Code amendments encourage a suspended cable transportation system to be considered as a transportation option, they reserve for the future the determination of what kind of system, if any, should actually be developed."
(Emphasis in original.)
Plaintiffs did not attach any exhibits or affidavits to their response to defendant's motion to dismiss. In their memorandum responding to defendant's motion to dismiss, plaintiffs argued that defendant had approved the construction of a tram above Gibbs Street through Resolution 36085; however, plaintiffs did not attach a copy of that resolution to their memorandum. Although the trial court could have taken judicial notice of the content of the resolution, OEC 202(7), plaintiffs did not ask the court to do so. They do, however, ask us to take judicial notice of Resolution 36085 and several other resolutions enacted by defendant that they have appended to their opening brief.
An appellate court can take judicial notice of facts under OEC 201(f), and OEC 201(d) purports to make it mandatory for a court to do so if a party asks that judicial notice be taken and provides the requisite information. Such a requirement seems to be in tension with the general rule that an appellate court will not say that a trial court erred on the basis of information that is outside the trial record. However, we need not decide whether it is proper for us to take judicial notice of Resolution 36085 because, even if we did, plaintiffs' claim was not ripe.[4]
In Resolution 36085, defendant accepted the city engineer's recommendation that the city council should "pursue" the Gibbs Street alignment for the tram. The city engineer reached that recommendation after reviewing six alternative plans to connect North Macadam and Marquam Hill. Five of the alternatives involved a suspended cable transportation system of some form; the sixth alternative involved a shuttle bus using four different surface routes. Three of the suspended cable transportation system alternatives involved an alignment above Gibbs Street. The resolution also directed the Portland Office of Transportation to begin the design development phase of the suspended cable transportation system process. The design development phase, which would include a potential design competition, would result in a city engineer recommendation to the city council on the design of the aerial tram. At least one more phase was scheduled to follow the design development phase, consisting of preliminary engineering, land use review if required, final engineering, and construction.
ORS 28.020 requires that a plaintiff's rights must be "affected" at the time the complaint is filed. See U.S. West Communications, 336 Or. at 191, 81 P.3d 702. The test for whether a claim for declaratory relief is justiciable is whether an "existing state of facts" threatens a plaintiff's legal rights. Cummings Constr., 242 Or. at 110, 408 P.2d 80; see also McIntire v. Forbes, 322 Or. 426, 434, 909 P.2d 846 (1996) (holding that, for a claim to be ripe, "[t]he controversy must involve present facts as opposed to a dispute which is based on future events of a hypothetical issue" (internal quotation marks omitted)).
Based on the facts alleged in plaintiffs' complaint and the provisions of Ordinance 176742 and Resolution 36085, we conclude that plaintiffs' claim for declaratory relief was not ripe for adjudication at the pertinent time, i.e., at the time that it was filed. Although Resolution 36085 establishes *137 that defendant had accepted a recommendation to pursue an aerial tram aligned above Gibbs Street, the language of Ordinance 176742, enacted the same day that defendant adopted Resolution 36085, "reserve[d] for the future the determination of what kind of [suspended cable transportation] system, if any, should actually be developed."
There is no single fixed point in defendant's planning process at which all potential claims for declaratory relief involving that process would be ripe. Ripeness in this context depends not only on the nature of defendant's ordinances and resolutions but also on the nature of the rights, status, or other legal relations at issue and the declaratory relief that is sought. A governmental action whose effect on one plaintiff might be too hypothetical to present a ripe controversy can in fact present such a controversy as to another plaintiff if that plaintiff can establish that merely planning or speculating about a future event has a current, palpable effect on his rights, status, or other legal relations that the requested declaratory relief could affect. Cf. Fifth Avenue Corp. v. Washington Co., 282 Or. 591, 608-14, 581 P.2d 50 (1978) (by implication).
Here, plaintiffs relied on their status as owners of property along Gibbs Street in seeking a declaration about the compensation that would be due them if an aerial tram were constructed above Gibbs Street. However, their status as property owners was not affected by Ordinance 176742 or Resolution 36085 because those enactments made clear that the construction of an aerial tram above Gibbs Street, although more than a fleeting idea in the mind of a city planner, remained only a possibility. The documents suggested that, if a tram were to be constructed, it would most likely be aligned above Gibbs Street, but defendant made clear in Ordinance 176742 that the decision whether to build any tram at all was reserved for a future occasion. Conversely, plaintiffs neither alleged nor presented facts that would establish that merely considering Gibbs Street as the alignment for a potential tram affected any of their rights, statuses, or other legal relations. For example, none of the plaintiffs alleged that potential buyers of their property had been deterred from purchasing Gibbs Street property because of defendant's enactments. Whether even that would have been sufficient to establish the existence of a justiciable controversy under ORS 28.020 for the declaration that plaintiffs sought, we reserve for another day. We simply use that hypothetical to illustrate that the point at which a claim becomes ripe depends on the relationship among the defendant's enactments, the rights, status, or other legal relations of the plaintiff that are at issue, and the nature of the declaratory relief that is sought.
Because the record does not reflect that plaintiffs' rights, statuses, or other legal relations were affected by defendant's enactments at the time that plaintiffs filed their action, plaintiffs' claim for declaratory relief was not ripe under ORS 28.020. Therefore, the trial court lacked jurisdiction over that claim and did not err in dismissing it.
Affirmed.
NOTES
[1] Plaintiffs also sought a writ of review, which the trial court quashed. Plaintiffs challenge on appeal only the dismissal of their declaratory judgment claim.
[2] Defendant also argued in support of its motion that there was another action pending between the parties. See ORCP 21 A(3). Defendant never pursued that argument, and we do not address it.
[3] The question in Poddar was one of mootness, which is typically considered a species of constitutional justiciability and undoubtedly jurisdictional in nature.
[4] Of the enactments of which plaintiffs have asked us to take judicial notice, only Resolution 36085 is relevant. That is because it was passed by defendant on July 10, 2002, and its content reflects facts in existence at the time that the complaint in this action was filed in September 2002. The other resolutions and actions of defendant that plaintiffs urge us to examine are irrelevant because they were enacted after the complaint was filed. A case must be ripe for adjudication at the time that it is filed; subsequent events cannot "ripen" a controversy. Cf. Johnson v. Assured Employment, 277 Or. 11, 14, 558 P.2d 1228 (1977) ("The great weight of authority of both old and recent cases is that a premature appeal will not so ripen and that if the party attempting to appeal does not file a new notice of appeal when the impediment to ripeness is removed, the appellate court lacks jurisdiction."). Thus, we do not consider the other documents submitted to us by plaintiffs.