Elizabeth ORR,
William Orr, Nelson Vierra, Susan Daily,
Glade Hilton, Michael Wolff,
Karen Wolff, and Tomina Wolff,
*Appellants,*

*v.*

EAST VALLEY WATER DISTRICT,
*Respondent.*

03C-17163; A125101

125 P3d 834

Peggy Hennessy argued the cause for appellants. With her on the briefs was Reeves, Kahn & Hennessy.

David E. Filippi argued the cause for respondent. With him on the brief were Ellen Hawes Grover and Stoel Rives LLP.

Before Armstrong, Presiding Judge, and Brewer, Chief Judge, and Landau, Judge.*

BREWER, C. J.

---

* Landau, J., *vice* Richardson, S. J.

**BREWER, C. J.**

■      Petitioners appeal from a judgment dismissing their petition for a writ of review of respondent's decision under ORS 545.099 denying petitioners' request for exclusion of their lands from the East Valley Water District. The trial court determined that the action was not justiciable because petitioners had not shown that respondent's denial of their request for exclusion, even if erroneous, had a practical effect on petitioners' rights. Although the trial court granted respondent's motion for summary judgment, respondent's justiciability argument is properly understood as a challenge to the trial court's subject matter jurisdiction. *Beck v. City of Portland*, 202 Or App 360, 365-67, 122 P3d 131 (2005). Therefore, the trial court's task was not subject to the procedural limitation on summary judgment under which the court could not grant the motion if there were one or more genuine issues of material fact for resolution by a trier of fact. *See* ORCP 47 C. Instead, it was the trial court's obligation to decide any disputed facts and determine, as a matter of law, whether subject matter jurisdiction exists. *See Beck*, 202 Or App at 367-68.

In performing that task, the trial court could, under ORCP 21 A(1), consider evidence and affidavits submitted by the parties. *Id.* Where, as here, the trial court found the pertinent facts, this court reviews the trial court's decision for errors of law. *Id.* For the reasons that follow, we reverse and remand.

Respondent is an irrigation district, formed under ORS chapter 545, that encompasses property in Marion and Clackamas counties. The district was formed in 1998 without an election because the formation petition was signed by all owners of property within the proposed district who would be subject to the charges and assessments of the district. *See* ORS 545.029(3).[1] Petitioners are owners of property located

---

[1] ORS 545.029(3) provides:

"If the county court finds that the petition is signed by all of the owners of all of the lands that are included within the proposed district and that will be subject to the charges and assessments of the proposed district and if the only modifications of district boundaries are at the request of owners of land seeking inclusion under subsection (1)(c) of this section, the county court shall

within the boundaries of respondent's district, but they did not sign the formation petition. Respondent has not proposed petitioners' property for assessment. Some or all of petitioners previously have unsuccessfully challenged the formation of respondent's irrigation district in Marion County and previously have unsuccessfully attempted to form an alternative, competing district in Clackamas County. *See Butte Creek Assn. v. Marion County*, 174 Or App 149, 23 P3d 997, *rev den*, 332 Or 430 (2001) (unsuccessful challenge to formation of respondent's district); *Orr v. Clackamas County*, 177 Or App 329, 34 P3d 1217 (2001).

On February 14, 2003, petitioners filed a petition under ORS 545.099 with respondent's board of directors, requesting that their property be excluded from the district.[2] In their petition, petitioners set out the following grounds for exclusion of their property from the district:

---

enter an order creating the district and the election otherwise required by ORS 545.037 shall not be held. If the petition for formation also names persons desired as members of the first board of directors of the district and those persons have agreed in writing to serve as directors, the order shall declare those persons to be the directors of the district."

[2] ORS 545.099 provides:

"(1) The owners in fee of one or more tracts of land or the holders of an uncompleted title to government or state lands which constitute a portion of an irrigation district may jointly or severally file with the board of directors a petition requesting that those tracts be excluded and taken from the district. The petition shall state the grounds upon which it is requested that the lands be excluded. The petition shall also describe the boundaries of the tracts sought to be excluded and the lands of the petitioners which are included within those boundaries. The description of the lands need not be more particular or certain than is required when the lands are entered in the assessment book by the county assessor.

"(2) Upon receipt of a petition for exclusion, the board of directors shall review the petition and shall enter its order approving the petition. The board may approve the petition subject to the requirements of ORS 545.051, 545.097 or 545.126 or may approve the petition without conditions, as the board considers appropriate. The board, as a condition of exclusion, may require the petitioners to pay all costs of exclusion, including but not limited to recording fees, a reasonable administrative fee and all past due charges and assessments of the district attributable to the petitioners and the lands of the petitioners. When any district facilities, including but not limited to ditches, pipelines, headgates or other waterworks, are on the lands of the petitioners, if the petitioners propose to change the use of the land, the district may require the petitioners to provide measures to protect those facilities and may require that appropriate easements be provided if there are none of record."

"1. Petitioners have never been, and will not be, served by the system of works for the proposed irrigation district; therefore, there are no pending assessments;

"2. Petitioners want to assure that they will not be assessed for any of the costs associated with the system of works for the proposed irrigation district; and

"3. Petitioners want to be sure that they are eligible to participate in alternate irrigation districts should that be necessary or desirable."

On June 9, 2003, respondent formally adopted minutes reflecting its board of directors' decision to deny petitioners' request for exclusion. Petitioners filed a petition for writ of review of that decision in the circuit court. Petitioners then moved for summary judgment, arguing that they were entitled to have their property excluded from the district under ORS 545.099. Respondent filed a cross-motion for summary judgment asserting, among other arguments, that petitioners' claim was not justiciable because they had not shown that the denial of their petition for exclusion had an existing practical effect on their rights. The trial court granted respondent's cross-motion for summary judgment on the ground that petitioners' claim was not justiciable. Relying on this court's decision in *Utsey v. Coos County*, 176 Or App 524, 539-40, 32 P3d 933 (2001), *rev dismissed as moot*, 335 Or 217 (2003), the trial court reasoned:

"If the allegations in the petition for review are accepted, there is a violation of the law, (a nondiscretionary statute), but there is an issue of whether or not there is a practical impact upon the Petitioner. The first two grounds for exclusion have no practical impact as at this point the water district has not offered services nor have they assessed for them. The third grounds for exclusion may well impact the Petitioner's rights because under ORS 545.041(6), the district's consent is required in order for the Petitioner to form a[n] alternate water district. At this point this is not a 'practical impact' on the Petitioner because they have not asked for consent and their request for consent has not been denied."

Because the court determined that petitioners' claim was not justiciable, it did not reach their motion for summary judgment but, instead, entered a judgment dismissing the action.

On appeal, petitioners renew their argument that ORS 545.099 accords them an absolute right to have their land removed from the district. Petitioners rely on the provision of ORS 545.099(2) stating that, "[u]pon receipt of a petition for exclusion, the [district's] board of directors shall review the petition and *shall enter its order approving the petition.*" (Emphasis added.) According to petitioners, the "forced inclusion" of their property in the district has two practical effects on their rights: (1) It creates a substantial encumbrance on their property ownership rights, and (2) in view of the historically adverse relationship between the parties, it has the more specific effect of giving respondent control over whether petitioners can form their own irrigation district. *See* ORS 545.041(6) (providing that, "[a]fter the date of organization of an irrigation district, the county court of any county including any portion of the district shall not allow another district to be formed that includes any lands in the existing district, without first securing consent for the formation from the existing district"). The latter effect, as petitioners see it, is sufficient to present a justiciable issue, even though they have not asked for respondent's consent to form their own district, nor has respondent denied consent. Alternatively, should we determine that a more immediate and certain effect is necessary in order to satisfy the "practical effects" test that this court adopted in *Utsey*, petitioner urges us to overrule *Utsey*. According to petitioner, *Utsey* adopted an unduly restrictive test that is inconsistent with traditional principles of justiciability.

■ Respondent makes a layered response to petitioners' arguments. First, respondent argues that, even though the trial court decided that petitioners' claim was not constitutionally justiciable, under a "first things first" analysis,[3] this court should conclude that petitioners lacked statutory standing to bring a writ of review action under ORS 34.040(1) because they failed to demonstrate that a "substantial interest" of theirs "has been injured."[4] Second, respondent argues that petitioners' claim is not justiciable because its denial of

_____

[3] A court will address statutory standing requirements, if any, before reaching the question of constitutional justiciability. *US West Communications v. City of Eugene,* 336 Or 181, 191, 81 P3d 702 (2003).

[4] ORS 34.040(1) provides:

petitioners' exclusion request had no practical effect on their rights. Although respondent makes separate arguments regarding petitioners' statutory standing under ORS 34.040(1) and the constitutional justiciability of their claim, those arguments largely coalesce and do not require extended independent discussion. *See Utsey*, 176 Or App at 543 (citing, as support for existence of constitutional practical effect requirement, Supreme Court's statement in *Gortmaker v. Seaton*, 252 Or 440, 443, 450 P2d 547 (1969) that, "[i]n order to have standing to maintain declaratory proceedings, one must allege a substantial interest in the matter in controversy"). Reduced to their core, respondent's arguments are that the inclusion without assessment or charge of petitioners' property in the district does not affect their property interests because petitioners' property is included within the district only for "administrative convenience," ORS 545.091,[5] and that respondent's power of consent to petitioners' formation of an alternative irrigation district does not depend on whether petitioners' property is excluded from the district, petitioners have no statutory right to form their own alternate irrigation district, petitioners have not presented any evidence of an existing plan to form an alternative district, there is no evidence that respondent would deny consent to form such a district if it were requested, and, even if consent were denied, petitioners could form a subdistrict under other statutory authority.[6]

---

"The writ shall be allowed in all cases in which a substantial interest of a plaintiff has been injured and an inferior court including an officer or tribunal other than an agency as defined in ORS 183.310(1) in the exercise of judicial or quasi-judicial functions appears to have:

"(a) Exceeded its jurisdiction;

"(b) Failed to follow the procedure applicable to the matter before it;

"(c) Made a finding or order not supported by substantial evidence in the whole record;

"(d) Improperly construed the applicable law; or

"(e) Rendered a decision that is unconstitutional."

[5] ORS 545.091 provides:

"The boundaries of a district may for administrative convenience encompass lands that are not subject to the charges and assessments of the district, without regard to whether the lands are susceptible to irrigation. An owner whose land is within the boundaries of a district but is not subject to the charges and assessments of the district does not have the rights or duties of an elector or owner of land under this chapter."

[6] Much of the parties' arguments blur the line between the issues of statutory standing and the justiciability of petitioners' claim for a writ of review, which are

As respondent sees things, petitioners' statutory standing and justiciability arguments are based solely on the assertion of a statutory right, the violation of which, if any, does not *per se* create an injury or practical effect that would permit a determination of their claim on the merits. Petitioners argue in turn that it is sufficient, to satisfy the requirements of statutory standing and justiciability, that "[t]hey have alleged violation of a statute designed to protect their rights, and they have alleged injury" in the form of a need to seek respondent's permission to form an alternative district "as a result of that violation."

As they relate to the parties' arguments in this case, the questions whether petitioners have shown an injury to a "substantial interest" of theirs and whether respondent's action had a practical effect on their rights are essentially identical. In either case, the issues are two-fold: (1) Whether the statutory right that petitioners assert is one whose denial, by itself, constitutes a cognizable injury or practical effect, and (2) if the denial of the asserted statutory right, by itself, is not sufficient to confer both statutory and constitutional standing, whether the necessity of respondent's consent to petitioners' formation of an alternative irrigation district constitutes such an injury or effect. Because we answer the first question affirmatively, we do not reach the second.

■      A controversy is not justiciable if the party bringing the claim has only an abstract interest in the correct application of the law. *Yancy v. Shatzer*, 337 Or 345, 349, 97 P3d 1161 (2004); *Utsey*, 176 Or App at 542 (citing cases). Thus, a party must demonstrate that a decision in the case will have a practical effect on its rights. *Yancy*, 337 Or at 349; *Utsey*, 176 Or App at 550. In our divided en banc decision in *Utsey*, a majority of the court held that the Oregon Constitution limits the legislature's ability to confer standing on persons to seek judicial review of executive or administrative action. More specifically, the majority held that, regardless of the legislature's provision of standing to obtain judicial relief, constitutional requirements of justiciability require that the interests of the parties to a judicial action be adverse and that a court's

before us on appeal, and the merits of that claim, which are not. We do not address the merits of petitioners' claim, except to note that, fitting of an actual controversy, it is hotly contested.

decision have some practical effect on the rights of the parties to the controversy. *Id.* at 540-50.

The majority concluded that those requirements were not satisfied by the legislative scheme for judicial review of local land use decisions. Under that scheme, any person who participated in any local land use proceeding could seek judicial review of that decision. There were no legal limits on who could participate at the local level and no requirement that a participant, in seeking judicial review of the decision, demonstrate that the decision will have any legal effect on the person seeking review. *Id.* at 549-51. The majority concluded, therefore, that the statutes effectively conferred on litigants "the right to obtain an advisory opinion, which is beyond the authority of the legislature to grant," *id.* at 550, and that the petitioner in *Utsey* had not demonstrated any interest beyond a desire for such an advisory opinion. The perceived problem in *Utsey* was the fact that the petitioner made no showing whatsoever, apart from its reliance on a statutory conferral of standing, that it had any relationship to the property the use of which was at issue. *Id.* at 561 ("The vice of the statute is in its breadth—it has no mechanism, like the 'aggrievement' requirement of ORS 183.480(1), by which it limits the right of judicial review to those parties who have *a personal stake* in the outcome of the proceeding." (Edmonds, J., concurring) (emphasis added)). Thus, *Utsey* was first and last about the extent of the legislature's authority to confer statutory standing on persons with *no* apparent legal interest in the outcome of the case.[7]

In another line of cases, the Supreme Court and this court have addressed the justiciability of claims involving a disputed legal issue that had only a speculative effect on the

---

[7] The problem of a conferral of statutory standing without a constitutionally sufficient practical effect continues to surface most frequently in land use cases. Most recently, in *Polk County v. DLCD*, 199 Or App 501, 507, 112 P3d 409 (2005), we addressed another variation of the pattern:

"Although 1000 Friends' showing in this case better explains its organizational goals and the nature of its dissatisfaction with the challenged order than did the League of Women Voters in *Utsey, that showing nonetheless expresses only philosophical and political disagreement with LCDC's decision.*"

(Emphasis added.) Unsurprisingly, this court has never held that a landowner lacked constitutional standing to contest on judicial review a land use decision affecting the landowner's property.

rights of a claimant. *League of Oregon Cities v. State of Oregon*, 334 Or 645, 658, 56 P3d 892 (2002), for example, involved a constitutional challenge to an initiative measure (Ballot Measure 7 (2000)), enacted to require a government to compensate private property owners whenever regulations were enacted that reduced the value of real property. *Id.* at 649. Several of the plaintiffs alleged simply that they were landowners in areas that were subject to regulations restricting the use of property and asserted that the initiative measure would bring about increased development. *Id.* at 659. The Supreme Court determined that those plaintiffs lacked standing because they "failed to allege or show that Measure 7 would lead to increased development, how it would do so, and how, specifically, that increased development would affect them as landowners." *Id.*

The court concluded, however, that other landowner plaintiffs did have standing. For example, one rancher alleged that, if the measure caused the repeal or nonenforcement of land use restrictions, land surrounding his ranch could be developed for residential or commercial uses that would diminish the value of the ranch and interfere with his ability to continue ranching. *Id.* at 660. The court reasoned that, although the consequences that that plaintiff anticipated "[were] not certain to result from the implementation" of the measure, they were nonetheless "plausible, concrete ramifications." *Id.* at 661.[8]

■　　This case is materially different from both the "statutory standing without a legal interest" problem epitomized by *Utsey* and the "speculative effects" line of decisions represented by *League of Oregon Cities* and *Hinkley*. Each of those

---

[8] *Hinkley v. Eugene Water & Electric Board*, 189 Or App 181, 74 P3d 1146 (2003), a declaratory judgment case, is another example of that pattern. In *Hinkley*, a ratepayer and a mail-processing business brought an action seeking declaratory and injunctive relief against a city water and electric board, alleging that the board failed to follow required public-contracting practices. The trial court dismissed the action for lack of justiciability. On appeal, we held that the ratepayer's allegations that the board's failure to follow certain legal requirements in entering into contracts caused the board to incur higher costs of operations were sufficient to establish the ratepayer's standing under the Uniform Declaratory Judgments Act (UDJA). By contrast, the supposition and speculation of the business, which never attempted to contract with the board, was insufficient to establish its standing under the UDJA.

patterns involves an abstract interest problem. Here, by contrast, petitioners' own property is the subject of the action. If their interpretation of ORS 545.099(1) is correct, the legislature has given them more than an abstract right to participate in a legal proceeding and their interest in the outcome of the action is certain; they have the positive statutory right to exclude their property from an irrigation district in which it currently is included.

Clearly, petitioners have an interest in the legal status of their property. In this case, the pertinent legal status—inclusion in an irrigation district—is governed by statute. *See* ORS 545.029(1) (requiring county court to establish boundaries of irrigation districts upon formation); *see also* ORS 545.051 - 545.131 (setting out procedure for modification of district boundaries); ORS 545.057 (addition of land to district); ORS 545.089 (redivision of district); ORS 545.091 (inclusion of unassessed land for administrative convenience); ORS 545.093 (creation of subdistricts); ORS 545.097 (exclusion of tracts from district); ORS 545.099 (removal of land from district). Whether that status, or the right to alter it, is beneficial or burdensome is not for a court to decide in making a justiciability determination.[9] That is a policy choice for the legislature to make. It is sufficient that the statutory right to alter the status attaches to petitioners' own property, which distinguishes this action both from the claim of a gadfly who asserts what respondent describes as a "generalized right to live in a state in which the state and local governments comply with the law" and from the claim of a litigant whose rights are only speculatively at risk.

_____

[9] We do not mean to suggest that the statutory right of exclusion under ORS 545.099 is unimportant to landowners, like petitioners, whose property may be included within an irrigation district solely for administrative convenience. That right may be valuable for any number of reasons that do not require extended exploration under the circumstances of this appeal, including, for example, the possible right to form an alternative irrigation district without respondent's consent, *see* ORS 545.041(6), and the right to avoid condemnation by respondent if petitioners' lands should become part of a different irrigation district. *See* ORS 553.270 ("[T]he right of condemnation may not be exercised against lands or water rights of an irrigation district organized under ORS chapter 545[.]"). The point is that it is not the function of a reviewing court, when determining the justiciability of a claim, to speculate about the usefulness of a statutory right that involves the claimant's property interests. Such an exercise would do nothing to get at the *constitutional* problem of abstract interest litigation.

No Oregon case, including *Utsey*, holds or suggests that the assertion of a statutory right affecting the legal status of the claimant's own property is insufficient to create a justiciable controversy between the holder and the alleged violator of the right. We decline to so hold here. Because a judgment on the merits in this action will have a practical effect on the legal status of petitioners' property, their claim is constitutionally justiciable. Likewise, because petitioners have asserted an injury to a statutory right affecting their property, they have standing under ORS 34.040(1). It follows that the trial court erred in granting respondent's cross-motion for summary judgment.

Reversed and remanded.