AOYAGI, J.
*471 Plaintiff utilized the City of Portland's Early Assistance program to obtain advice regarding likely requirements for a possible development. Displeased with the response, plaintiff pursued the matter further with the city, culminating in the Public Works Appeals Board denying plaintiff's appeal. Plaintiff then petitioned for a writ of review in the circuit court. The circuit court dismissed the petition and quashed the writ for lack of jurisdiction. Plaintiff appeals. For the reasons that follow, we affirm.
The relevant facts are undisputed. In 2014, plaintiff purchased real property on NE Prescott Street in Portland. He planned to eventually divide it into multiple lots. In February 2016, plaintiff filed an application with the Early Assistance program, an informal program through which the City of Portland assists landowners in identifying potential *565 land use issues for development projects, prior to submittal of formal land use review or permit applications. The program is voluntary and is not addressed in the Portland City Code.[1] Plaintiff sought advice regarding the possible division of his property into four or six lots. He completed an Early Assistance application in which he provided the address of the property, briefly described the proposed land division, and identified "[q]uestions to be discussed." Specifically, his description stated,
"The proposal is to divide the site into 4 (Option 1) to 6 (Option 2) lots. Under Option 2, a Property Line Adjustment will be accomplished with the adjacent property to the west [to] increase the size of the site. The existing house is proposed to be retained on Lot 1. The existing garage with finished living space is proposed to be retained on Lot 2, with an addition to increase the size. Stormwater disposal for the homes is proposed via drywells on each lot. Stormwater for the public street is proposed to match [other] improvements."
*472 He then listed his questions, including, "What street improvements will be required?"
City staff met with plaintiff on or about March 16. On April 1, the city provided a written response to plaintiff's Early Assistance application, titled "Early Assistance Appointment Response." It began, "Portland Transportation/ Development Review (PBOT) staff has reviewed the early assistance materials to identify potential issues and requirements." It then addressed various potential issues and requirements. As to frontage improvements on NE Prescott, the response stated:
"The applicant will be required to construct frontage improvements on NE Prescott to consist of a curb 19-ft from centerline and the 16-ft wide sidewalk corridor. An approximate 5-ft dedication of property for ROW purposes is necessary to accommodate standard improvements. The exact amount of property dedication required to accommodate these improvements to be determined during the Public Works process and will depend upon stormwater needs and site specifics."
(Emphases omitted.) The response further stated that, "[i]f the applicant wishes to propose an alternative to the required frontage improvements identified herein, they may apply for a Public Works Alternative Review."
Plaintiff applied for a Public Works Alternative Review on April 29. He requested "that the dedication and improvements along NE Prescott be eliminated." He argued that they were "impractical," would "serve no function and provide no benefit," and would "treat the applicant different than owners on the south side of NE Prescott." He argued also that they would amount to an unconstitutional exaction under federal law.[2] On May 16, the Public Works Alternative Review Committee denied plaintiff's request and issued a short written decision explaining why it was "not supportive *473 of removing the frontage requirements along NE Prescott Street."
On May 20, plaintiff filed an appeal request with the Public Works Administrative Appeals Panel, in which he attested that he was appealing a "permit decision." The Appeals Panel held a hearing on the matter on June 14; if any record was made of that hearing, it is not in the record on appeal. In a document of the same date, the city addressed plaintiff's constitutional arguments. The city first noted that the "potential requirements identified during the Early Assistance review" did not qualify as "conditions *566 placed on development" and therefore were not subject to federal takings law. Nonetheless, "for the sake of transparency and cooperation," the city treated the potential requirements as if they were actual conditions of approval so that it could reach the merits, and it proceeded to argue why such requirements, if imposed, would not be an unconstitutional taking. After the hearing, both parties submitted additional materials. On July 6, the panel denied plaintiff's appeal by email, stating its decision: "Deny the appeal. Staff has applied code and policies appropriately in this case."
Plaintiff appealed to the Public Works Appeals Board, asserting that the Appeals Panel had not made adequate findings to support its decision. He again attested that he was appealing a "permit decision." The Appeals Board held a hearing on August 17; that hearing is summarized in the board's meeting minutes. Toward the end of the meeting, a representative for the Bureau of Transportation expressly
"noted that no application for a land division has been submitted and *** this is an Early Assistance request. When the land division application is submitted, a full evaluation and findings will be done on individual parking, pedestrian traffic and facilities, traffic and bike use. This is an Early Assistance request that evaluates what will be required during the land division application process. The Early Assistance process prepares the owner for what's to come."
Soon thereafter, one of the three voting panel members stated that it "[wa]sn't far enough into the process to warrant additional findings." The same panel member then described the *474 board's role as being only to decide "if the City's Bureau staff is consistently applying the rules and codes from project to project." In his view, "Staff on this project has been consistent with other projects in applying the rules and codes," so he proposed to deny the appeal. The other two panel members agreed. The minutes note the board's decision to deny plaintiff's appeal and uphold the Appeal Panel's decision "based on the determination that [the] City has applied its code, rules, and standards consistently."
On September 7, plaintiff petitioned for a writ of review in the circuit court. He described the Appeals Board's decision as "a final decision" of "the City, through its Public Works Appeals Board," which had "den[ied] [plaintiff's] appeal and uph[eld] the requirement that [plaintiff] dedicate property and complete public improvements along [plaintiff's] NE Prescott frontage." Plaintiff asserted that the decision was "not supported by substantial evidence in the whole record, improperly construed applicable law, and was unconstitutional, thus causing substantial injury to [plaintiff's] interests."
The city moved to dismiss plaintiff's petition and quash the writ. The city asserted that plaintiff "seeks review of a matter in which there is no final decision by the City." It made several arguments as to why that was fatal to obtaining a writ of review, including that the court lacked subject matter jurisdiction because the matter was not ripe. The city emphasized the nature of the Early Assistance program-describing it as "general advice from the City about requirements that could be applied to [plaintiff's] development once the City is presented with concrete plans for it" (emphasis in original)-and argued that the provision of Early Assistance advice regarding a hypothetical land division had not caused any "injury" to a "substantial interest" of plaintiff's, as required to obtain a writ of review under ORS 34.040.
Plaintiff opposed the city's motion. He argued that the city's Early Assistance Appointment Response imposed "requirements" for his proposed land division, that such "requirements" were appealable to the Appeals Panel and the Appeals Board under the city code, and that the Appeals *475 Board's decision was the final decision on the "requirements." He also argued that the city should be "estopped" from contesting the finality of the Appeals Board's decision, because, in his view, that position was inconsistent with the city code's appeal provisions.
After a hearing, the circuit court ruled that it lacked jurisdiction because the matter was not ripe. The court stated that it was "sympathetic to [plaintiff's] argument that he was led down a path to thinking a final decision *567 was being made." Nonetheless, it explained, "this is not a case that's ripe for my decision," because "the early assistance process is not one that is designed to be a final determination of what restrictions are going to be imposed on the property." Rather, the early assistance process is only "a preview of what a land owner can expect." The court emphasized that it was "not making a decision on the merits" of plaintiff's constitutional takings argument. Indeed, the court noted, given the preliminary nature of early assistance, it did not have "the fully developed robust record that would be needed ultimately to determine whether or not this is a constitutional taking." The court also rejected plaintiff's estoppel argument. After ruling, the court asked the city to prepare an order, using the "language of subject matter jurisdiction, because the dispute is not ripe for my determination, based on its procedural history." Plaintiff appeals the resulting judgment.
We begin with plaintiff's first assignment of error, in which he argues that the circuit court erred when it ruled that it lacked jurisdiction because the matter was not ripe for review. We review legal conclusions regarding jurisdiction for errors of law. Magar v. City of Portland , 179 Or. App. 104, 106, 39 P.3d 234 (2002).
The process for obtaining a writ of review is codified in ORS 34.010 to 34.102. The availability of a writ of review is governed by those statutes and their requirements, including statutory justiciability requirements. In that vein, ORS 34.040 provides:
"The writ shall be allowed in all cases in which a substantial interest of a plaintiff has been injured and an inferior court including an officer or tribunal other than an *476 agency as defined in ORS 183.310(1) in the exercise of judicial or quasi-judicial functions appears to have:
"(a) Exceeded its jurisdiction;
"(b) Failed to follow the procedure applicable to the matter before it;
"(c) Made a finding or order not supported by substantial evidence in the whole record;
"(d) Improperly construed the applicable law; or
"(e) Rendered a decision that is unconstitutional."
(Emphasis added.) See also Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm. , 287 Or. 591, 611, 601 P.2d 769 (1979) (plaintiff must have "suffered an identifiable injury to an interest of some substance" to obtain a writ of review).
As used here, "ripeness" refers to " 'an aspect of the doctrine of justiciability, specifically, the requirement that there be an actual, as opposed to a hypothetical, injury to the individual invoking the judicial power.' " Beck v. City of Portland , 202 Or. App. 360, 366, 122 P.3d 131 (2005) (quoting Coast Range Conifers v. Board of Forestry , 192 Or. App. 126, 129, 83 P.3d 966 (2004), rev'd on other grounds , 339 Or. 136, 117 P.3d 990 (2005) ). In U.S. West Communications v. City of Eugene , 336 Or. 181, 81 P.3d 702 (2003), the court concluded that ORS 28.020 -which allows a person to seek a declaratory judgment if the person's rights "are affected by a constitution, statute, municipal charter, ordinance, contract or franchise"-codifies a ripeness requirement for justiciability of a declaratory relief action. 336 Or. at 191, 81 P.3d 702 ; see also Beck , 202 Or. App. at 366, 122 P.3d 131 (describing U.S. West Communications as "appl[ying] the test for ripeness set out in [two prior cases] in which the court explicitly identified ripeness as a jurisdictional issue"). "[T]he legislature's use of the present tense phrase 'are affected' implies [that] the controversy must involve a dispute based on present facts rather than on contingent or hypothetical events." U.S. West Communications , 336 Or. at 191, 81 P.3d 702. Similarly, ORS 34.040 requires that "a substantial interest of a plaintiff has been injured " (emphasis added), thereby codifying a ripeness requirement for justiciability of a writ of review proceeding.
*477 Plaintiff does not dispute that ORS 34.040 imposes a justiciability requirement. Instead, he argues that this matter is ripe and that he has suffered an injury. That argument is premised on plaintiff's view of the Early Assistance Appointment Response as imposing "the public improvement requirements"
*568 for his proposed land division and his view of the Public Works Appeals Board's decision as the "final decision to uphold a requirement that [plaintiff] dedicate property and construct off-site public improvements." We disagree with both characterizations.
As previously noted, the Early Assistance program is an informal, voluntary program through which the city assists landowners in understanding the procedure and requirements for land use reviews and building permits. The city's Early Assistance Appointment Response was based on plaintiff's one-paragraph description of two potential land division proposals for his property and whatever other information plaintiff chose to provide in the meeting with city staff on March 16. The response begins with the express statement that staff "has reviewed the early assistance materials to identify potential issues and requirements ." (Emphasis added.) Any "requirements" thereafter discussed in the response must be understood in that context, i.e. , as potential requirements for a hypothetical project.
We therefore disagree with plaintiff that the Early Assistance Appointment Response imposed "requirements." The city simply responded to plaintiff's questions and identified requirements that would likely be imposed on a hypothetical land division for which no application had yet been filed. Of course, city staff presumably tried to predict accurately what requirements would be imposed, based on the existing city code and city policies, if plaintiff ultimately filed such an application. In that sense, plaintiff might well be correct that, if he were to file a land division application, the city likely would impose the same frontage requirements for NE Prescott as described in the Early Assistance Appointment Response. Indeed, to assume otherwise would be to assume that the city's early assistance response was inaccurate. But no matter how accurate the information in that response might prove to be, a prediction of the requirements that *478 the city would impose on a hypothetical future land division application is still a prediction and, as such, does not injure the advice recipient's substantial rights. See U.S. West Communications , 336 Or. at 191, 81 P.3d 702 (a ripe dispute is "based on present facts rather than on contingent or hypothetical events").
As for the appeals decisions, the mere availability of a city appeals process[3] did not transform the Early Assistance Appointment Response into something more than it otherwise was. The limited nature of the appellate review also is significant. The Appeals Panel denied plaintiff's appeal on the basis that city staff "ha[d] applied code and policies appropriately." Similarly, the Appeals Board denied plaintiff's appeal "based on the determination that [the] City ha[d] applied its code, rules and standards consistently." In other words, both bodies were unpersuaded that city staff had applied the city's code, policies, rules, or standards incorrectly or inconsistently in answering plaintiff's early assistance request, and neither body addressed any-thing beyond that, such as plaintiff's constitutional argument. Nothing in the appeals decisions elevated the Early Assistance Appointment Response to a binding determination of conditions for a land division.
Moreover, plaintiff was reminded in both the Appeals Panel and the Appeals Board proceedings that the City's early assistance response was preliminary in nature. In the Appeals Panel proceeding, city staff specifically noted the preliminary nature of early assistance in its written legal analysis, which was shared with plaintiff and the Appeals Board, and engaged with the merits of plaintiff's arguments only "for the sake of transparency and cooperation." In the Appeals Board proceeding, both a city representative and a voting panel member commented on *569 the prematurity of *479 making additional findings, until and unless plaintiff actually applied to divide the property, which is significant because the stated basis for plaintiff's appeal was that the Appeals Panel had not made adequate findings to support its decision.
Accordingly, the circuit court correctly concluded that it lacked jurisdiction to review the Appeals Board's decision in a writ of review proceeding under ORS 34.040. The Early Assistance Appointment Response was based on contingent or hypothetical events, not present facts, and the Appeals Board's decision did not alter that reality. The circuit court properly dismissed the petition and quashed the writ for lack of jurisdiction, because a statutory justiciability requirement of ORS 34.040 -that "a substantial interest of [the] plaintiff has been injured"-was not met.
That leaves plaintiff's second assignment of error. Plaintiff contends that the circuit court erred when it declined to estop the city from arguing that the Appeals Board's decision was not a final decision and therefore not ripe for review. "As a general proposition, a governmental agency may be estopped from asserting a claim that is inconsistent with a previous position that it has taken." City of Mosier v. Hood River Sand , 206 Or. App. 292, 319, 136 P.3d 1160 (2006). However, even if it were appropriate to apply estoppel in this situation (a matter on which we express no opinion), that would not allow the circuit court to ignore a jurisdictional defect under ORS 34.040. We therefore reject plaintiff's second assignment of error.
Affirmed.

Plaintiff characterizes the Early Assistance program as a "phase" of the permitting process. However, it appears to be undisputed that the program is voluntary; that is, it is not a prerequisite to applying for a permit or land division. If plaintiff contested the city's description of its own program, he presumably would have pointed the court to legal authority or evidence that the city's description of its own program was inaccurate.

Plaintiff's constitutional argument has become more detailed over time, but the essence of his argument was (and is) that, with respect to the development "conditions" in the Early Assistance Appointment Response, the City has not satisfied the "essential nexus" requirement of Nollan v. California Coastal Comm'n , 483 U.S. 825, 837, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), or the "rough proportionality" requirements of Dolan v. City of Tigard , 512 U.S. 374, 391, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994).

We note that plaintiff's paperwork initiating both appeals represented that plaintiff was appealing a "permit decision," and it is not clear that the Appeals Panel or the Appeals Board had actual authority to decide plaintiff's appeals once they realized that there was no permit decision. See Portland City Code 17.06.050(A), (B) (allowing for appeal of "permit decisions, requirements, and conditions" to the Appeals Panel); Portland City Code 17.06.050(F) (allowing for appeal of an Appeals Panel decision to the Appeals Board). We assume for present purposes, however, that they did have the necessary authority to hear and deny the appeals on the bases that they did.