700

Submitted July 10, 2014, affirmed March 9, 2016

PROGRESSIVE PARTY OF OREGON,
a certified Political Party,
*Plaintiff-Appellant,*
*and*

WORKING FAMILIES PARTY OF OREGON,
a certified Political Party; and
Larry George, an Oregon Elector, State Senator
and candidate in the 2010 General Election of the
Republican and Independent parties of Oregon,
*Plaintiffs,*

*v.*

Jeanne ATKINS,
Secretary of State of Oregon,
*Defendant-Respondent.*

Marion County Circuit Court
10C20167; A151588

370 P3d 506

Daniel W. Meek filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Michael A. Casper, Deputy Solicitor General, filed the answering brief for respondent. On the supplemental brief were Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Michael A. Casper, Assistant Attorney General.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Duncan, Judge.

HADLOCK, C. J.

## HADLOCK, C. J.

This case relates to plaintiffs' contention that defendant, the Oregon Secretary of State, violated a state election law in 2010 when she adopted OAR 165-007-0320, which required each candidate's political party to be identified by a specified "three character designation" on the general election ballot.[1] Although defendant repealed that rule in 2012, plaintiffs continued this litigation. In their first amended complaint, filed after the rule's repeal, plaintiffs sought a declaration that any use of "three character designations" for political parties was unlawful in the past and would be unlawful in the future; they also sought to enjoin defendant from using such designations in the future. The trial court dismissed the action, concluding that it was moot and that the issues raised did not fall within the "capable of repetition, yet evading review" exception to the mootness doctrine that is embodied in ORS 14.175. Reviewing for legal error, we affirm.

The facts are mainly procedural and, as pertinent to our review, are undisputed. ORS 254.135 (2009), *amended by*, Or Laws 2012, ch 102, § 1 set out specific requirements for the printing of ballots to be used in general and special elections. Subsection (3) of the statute generally required that "the name" or "the names" of the political party or parties that have nominated a candidate "be added opposite the name of the candidate." ORS 254.135(3)(a)(A) - (F) (2009).[2] Plaintiffs Progressive Party of Oregon, Working Families Party of Oregon, and Larry George (collectively, "plaintiffs") sued the Oregon Secretary of State in August 2010, generally asserting that she had violated ORS 254.135(3) (2009) as well as the state and federal constitutions by proposing, then adopting, OAR 165-007-0320, which required

---

[1] The Secretary of State adopted that administrative rule on August 4, 2010, and repealed it on January 3, 2012. *Former* OAR 165-007-0320 (Aug 4, 2010). In the remainder of this opinion, we refer to the rule simply as "OAR 165-007-0320," without including a designation of its effective dates.

[2] In 2012, the statute was amended to eliminate the requirement that the names of political parties be "added opposite" the associated candidates' names on the ballot. Instead, the amended statute requires the political parties' names to be "printed with" candidates' names. ORS 254.135; *see* Or Laws 2012, ch 102, § 1 (amending legislation). Those amendments do not affect our analysis in this case.

general-election ballots to use specified "three character designations" to identify the political parties that had nominated candidates on the ballots, rather than the names of those political parties.[3] Plaintiffs sought declarations to that effect under the Declaratory Judgment Act, ORS 28.010 to 28.160. In addition, plaintiffs sought preliminary and permanent injunctive relief preventing defendant "from refusing to implement * * * ORS 254.135(3) correctly" and requiring defendant to "add the names of each political party opposite the name of their respective candidates on the general election ballot."

Plaintiffs filed that initial complaint in August 2010. Defendant soon filed her opposition to the request for a preliminary injunction, and the trial court denied that request in September 2010.[4] According to plaintiffs, county elections officers complied with defendant's "directive * * * not to print party names next to the names of their nominees on the 2010 General Election ballot."

No more activity in the case occurred until a status conference was held in early 2012. Shortly thereafter,

---

[3] The pertinent sections of OAR 165-007-0320 provided:

"(1) The purpose of this rule is to adopt procedures for candidates appearing on the General Election Ballot who are nominated by multiple political parties.

"(2) The three character designation of a political party shall be added opposite the name of the candidate. The political party designations are:

"(a) Constitution Party—CON.

"(b) Democratic Party of Oregon—DEM.

"(c) Independent Party of Oregon—IND.

"(d) Libertarian Party of Oregon—LBT.

"(e) Pacific Green Party—PGP.

"(f) Oregon Progressive Party—PRO.

"(g) The Oregon Republican Party—REP.

"(h) Working Families Party of Oregon—WFP."

Other sections of the rule specified, among other things, the order in which designations would appear for candidates who had been nominated by multiple parties and the placement of a "key" to the three-character designations both on the ballot and in the voters' pamphlet. OAR 165-007-0320(3) - (7).

[4] While this case was in the circuit court, defendant was then-Secretary of State Kate Brown. Secretary of State Jeanne Atkins was substituted as defendant in August 2015, while this case was pending on appeal. We refer to both as "defendant" in this opinion.

plaintiffs filed a first amended complaint, generally seeking "a declaration that ORS 254.135(3) requires that the name of a political party which has nominated a candidate for partisan office appear opposite the candidate's name on the General Election ballot." (Underscoring in original.) In the amended complaint, plaintiffs alleged that the Secretary of State had "repealed all of OAR 165-007-0320" in January 2012 and had "printed ballots for the January 31, 2012, Special Election, with the full names of the parties next to their nominees on the ballot, in compliance with ORS 254.135(3), under a 'temporary' rule." Nonetheless, plaintiffs alleged, defendant had "not renounced using the abbreviations, acronyms or other symbols instead of party names on General or Special Election ballots." Plaintiffs asserted that defendant therefore could "subject[] the Plaintiffs and all voters to the same or similar violations of ORS 254.135 repeatedly." In the amended complaint, plaintiffs sought an order declaring the following:

- "ORS 254.135(3) requires printing the names of political parties next to their respective candidates on the ballot and 'unaffiliated' opposite certain others";

- "'Name' within the meaning of the statute is the 'word or phrase that constitutes the distinctive designation of a person or thing'"; and

- "The names of Oregon's currently certified statewide political parties are:

  | | |
  |---|---|
  | "Constitution | Pacific Green |
  | "Democratic | Progressive |
  | "Independent | Republican |
  | "Libertarian | Working Families" |

- "The abbreviations used by Defendant are not the 'names' of the political parties, so placing those abbreviations on the ballot opposite the names of candidates violates ORS 254.135(3)."

In addition, plaintiffs sought a permanent injunction "ordering that Defendant shall add the names of each political party opposite the name of their respective candidates on

the General Election ballot." Finally, plaintiffs sought an award of reasonable costs and attorney fees.

Defendant moved to dismiss the first amended complaint under ORCP 21 A(1) on the ground that the case was not justiciable. Defendant based that argument on two sets of facts, which it established through affidavits.[5] First, defendant pointed out that the administrative rule that had dictated the use of three-letter designations, instead of party names, had been repealed—as plaintiffs had acknowledged. Second, defendant asserted, she "has no plans to use three-character abbreviations in future elections" and "[t]he circumstances that led to the adoption of [the repealed] rule have changed."[6] Accordingly, defendant concluded, the case was moot.

Defendant also argued that plaintiffs' challenges were not subject to review under ORS 14.175, which she described as "Oregon's 'capable of repetition, yet evading review' statute."[7] Defendant asserted that "the 'policy or practice challenged by the party' [did] not continue in effect" because the rule had been repealed. And the specific

_____

[5] Defendant's contention that the action was not justiciable amounted to a contention that the court lacked subject matter jurisdiction. *Beck v. City of Portland*, 202 Or App 360, 368, 122 P3d 131 (2005). Accordingly, the trial court was not required to confine its analysis to the face of the pleadings, but could consider evidence submitted by the parties to determine whether plaintiffs' claims were justiciable. *Id.* In this case, both parties submitted evidence to support their arguments regarding justiciability. The trial court record does not create any disputes of fact that are material to our analysis, and the trial court's ruling is not predicated on any factual findings that either party challenges.

[6] Defendant's mention of changed circumstances appears to refer, at least in part, to the 2012 amendments to ORS 254.135. *See* 276 Or App at 702 n 2.

[7] ORS 14.175 provides:

"In any action in which a party alleges that an act, policy or practice of a public body, as defined in ORS 174.109, or of any officer, employee or agent of a public body, as defined in ORS 174.109, is unconstitutional or is otherwise contrary to law, the party may continue to prosecute the action and the court may issue a judgment on the validity of the challenged act, policy or practice even though the specific act, policy or practice giving rise to the action no longer has a practical effect on the party if the court determines that:

"(1) The party had standing to commence the action;

"(2) The act challenged by the party is capable of repetition, or the policy or practice challenged by the party continues in effect; and

"(3) The challenged policy or practice, or similar acts, are likely to evade judicial review in the future."

"act challenged by the party"—possible future use of three-letter abbreviations—was "too speculative," according to defendant, "to fit within the meaning of the phrase 'capable of repetition.'" Finally, defendant argued that—even if the requirements of ORS 14.175 were met—the trial court should exercise its discretion to not decide the moot case because some of plaintiffs' arguments were fact bound, and the specific facts on which plaintiffs pinned their arguments might not recur in a hypothetical future case.

In response, plaintiffs argued that the case was justiciable, and not moot, because defendant had not renounced her authority to require abbreviations to be printed on ballots in place of party names. Defendant rejoined that it was "impracticable" for her to renounce the possibility that she might, in the future, decide to use abbreviations because she could not "anticipate what future circumstances might arise that might require abbreviations different from those plaintiffs prefer."[8]

In a letter opinion, the trial court ruled that the case was "not justiciable" and was moot because "there no longer is an OAR allowing abbreviations and the Secretary['s] office has offered an affidavit saying there is no present intent to use abbreviations." In addition, the court stated, "under ORS 14.175 the practice is not likely to evade judicial review." Accordingly, the court granted defendant's motion to dismiss and entered a general judgment of dismissal.

On appeal, plaintiffs argue in their first assignment of error that the trial court erred when it concluded that plaintiffs' claims are not justiciable. In their second assignment of error, plaintiffs argue that the circuit court erred in concluding that the Secretary of State's "practice is not likely to evade judicial review" and, therefore, is not reviewable under ORS 14.175.[9] We review the trial court's rulings

---

[8] Throughout this litigation, defendant has asserted that, although plaintiffs argue that the Secretary of State is required to include the names of political parties on the ballot, the party names that plaintiffs say should be used are, themselves, shortened versions of "the precise name of each political party."

[9] In a third assignment of error, plaintiffs challenge additional reasoning that, they contend, formed the basis for the trial court's decision that this case was not justiciable. Specifically, they assert that the trial court erroneously decided that the 2012 amendments to ORS 254.135 made the case moot. Because

on those matters for legal error. *Chernaik v. Kitzhaber*, 263 Or App 463, 466, 328 P3d 799 (2014).

We begin by addressing plaintiff's contention that this action is justiciable. The Supreme Court held in *Couey v. Atkins*, 357 Or 460, 520, 355 P3d 866 (2015), that the Oregon Constitution does not impose "justiciability limitations on the exercise of judicial power in public actions or cases involving matters of public interest." More specifically, with respect to mootness, the court explained that the constitution does not *require* courts to dismiss "public actions or cases involving matters of public interest" when they become moot. However, the court emphasized that its holding does not mean "that moot cases will no longer be subject to dismissal." *Id.* To the contrary, courts retain "judicial discretion" to apply traditional justiciability doctrines and have authority to dismiss moot cases. *Id.* at 469 n 3.

*Couey* itself demonstrates that principle. The plaintiff in that case brought a declaratory-judgment claim, challenging the constitutionality of a statute that prohibited a person who was registered "to collect initiative petition signatures for pay" from, at the same time, obtaining signatures on a petition for which the person was not being paid. *Id.* at 462. During the pendency of the litigation, the plaintiff stopped working as a paid signature collector. He contended, nonetheless, that his action had not become moot because he intended to work as a paid signature gatherer in the future. *Id.* The Supreme Court disagreed, applying traditional justiciability doctrines to the claims for declaratory relief:

> "To maintain a declaratory judgment action, a plaintiff must establish at the outset that he or she satisfies the statutory requirements for standing to bring the action. Thereafter, the plaintiff's concrete stake in the outcome must continue throughout the pendency of the case. If, after the initiation of the action, it becomes moot, it will be dismissed for want of justiciability."

*Id.* at 469 (internal citation omitted).

we conclude that plaintiffs' action was not justiciable after defendant repealed OAR 165-007-0320, we need not address plaintiffs' challenge to any additional reasons that the trial court may have given for reaching the same conclusion.

In *Couey* the Supreme Court emphasized the principle, articulated in *Barcik v. Kubiaczyk*, 321 Or 174, 188, 895 P2d 765 (1995), that declaratory relief is available only "'when it can affect *in the present* some rights between the parties.'" 357 Or at 470 (emphasis in *Barcik*). And it is the task of the party bringing a claim to establish that the action remains justiciable—"that a decision in the case will have a practical effect on [the party's] rights"—throughout the action's lifetime. *Hood River Valley v. Board of Cty. Commissioners*, 193 Or App 485, 500, 91 P3d 748 (2004); *see Beck v. City of Portland*, 202 Or App 360, 370, 122 P3d 131 (2005) (to overcome a lack-of-ripeness defense, a plaintiff seeking declaratory relief must establish that a challenged future governmental action "has a current, palpable effect" on his or her rights or status that the requested relief could affect).

That aspect of *Couey* governs the justiciability analysis in this case. Plaintiffs seek declarations stating, essentially, that ORS 254.135(3) requires printing the names of candidates' political parties on the ballot and does not allow the use of three-character designations for those political parties. But plaintiffs have not established that any declarations to that effect would presently affect any rights between the parties. To the extent that the first amended complaint can be understood to seek a declaration that defendant violated ORS 254.135(3) in 2010, plaintiffs have not explained how such a declaration would *now* affect the parties' rights. And plaintiffs' request for a declaration about what the defendant may or may not do in the future— essentially seeking a declaration about a hypothetical administrative rule that does not exist and which defendant has said she has no plans to adopt—is a claim that "is classically unripe and thus not justiciable." *Couey*, 357 Or at 476 n 7 (so describing the plaintiff's attempt "to challenge the lawfulness of a rule that had not yet been adopted"). The trial court did not err when it ruled that plaintiffs' claims are moot. *See id.* at 471 (declaratory judgment action was moot where any suggestion of harm to the plaintiff was "a matter of no more than speculation, depending entirely on a series of assumptions unsupported by any evidence in the record").

In arguing to the contrary, plaintiffs contend that this case did not become moot when defendant repealed the administrative rule because it falls within the exception to the mootness doctrine for cases in which a defendant has voluntarily stopped engaging in a challenged practice. We described that exception in *Tanner v. OHSU*, 157 Or App 502, 510, 971 P2d 435 (1998):

> "The voluntary cessation of a practice that is challenged in an action for declaratory and injunctive relief does not, in itself, render an action moot; if the law were otherwise, wrongdoers could cease their wrongdoing as soon as complaints are filed and resume the wrongdoing as soon as the complaints are dismissed for being moot."

*Accord Safeway, Inc. v. OPEU*, 152 Or App 349, 355, 954 P2d 196 (1998).

That exception does not apply in this context, in which plaintiffs' complaint, at bottom, relates to an administrative rule that has been repealed and a hypothetical future administrative rule that defendant has said she has no plans to adopt. The *Tanner* "voluntary cessation" exception is best understood to apply in cases in which the challenged "practice" is one that the defendant can readily cease—in an effort to moot the challenge—and then resume again. Moreover, we have explained that the exception applies only where "the defendants maintain[] that they [have] a legal right" to resume the challenged conduct *and* a court determines "that a future dispute [is] likely." *Crandon Capital Partners v. Shelk*, 202 Or App 537, 548, 123 P3d 385 (2005), *rev'd on other grounds*, 342 Or 555, 157 P3d 176 (2007). At least the second of those two factors is not present here. Defendant has asserted that she has no plans to adopt a rule similar to the 2010 rule that plaintiffs challenged, and she has explained that—in her view, at least—the circumstances that led to adoption of that rule no longer exist. Because plaintiffs have not established that a future dispute over three-character political-party designations is likely, the *Tanner* exception to the mootness doctrine does not apply.

That brings us to plaintiffs' contention that the trial court should, nonetheless, have addressed the merits

of their claim under the exception to the mootness doctrine spelled out in ORS 14.175, which provides:

> "In any action in which a party alleges that an act, policy or practice of a public body, as defined in ORS 174.109, or of any officer, employee or agent of a public body, as defined in ORS 174.109, is unconstitutional or is otherwise contrary to law, the party may continue to prosecute the action and the court may issue a judgment on the validity of the challenged act, policy or practice even though the specific act, policy or practice giving rise to the action no longer has a practical effect on the party if the court determines that:
>
> "(1)  The party had standing to commence the action;
>
> "(2)  The act challenged by the party is capable of repetition, or the policy or practice challenged by the party continues in effect; and
>
> "(3)  The challenged policy or practice, or similar acts, are likely to evade judicial review in the future."

*Couey* confirmed the constitutionality of ORS 14.175, to the extent that it applies to actions "challenging the lawfulness of an action, policy, or practice of a public body." 357 Or at 522.[10] Nonetheless, as we explain below, the statute does not aid plaintiffs here.

We begin—and end—our analysis of the ORS 14.175 issue by considering whether plaintiffs met the second requirement of that statute, that is, whether they challenged an act that is "capable of repetition" or a "policy or practice" that "continues in effect." ORS 14.175(2). They did not.

First, plaintiffs have not challenged a "policy or practice" that "continues in effect." The challenged rule has been repealed, and plaintiffs have not alleged or established that—even in the absence of a rule similar to OAR

---

[10] *Couey* also confirmed that the statute "does not require a court" to decide moot cases, "but leaves it to the court to determine whether it is appropriate to adjudicate an otherwise moot case under the circumstances of each case." *Id.* We understand the trial court to have ruled that this case did not meet the requirements of ORS 14.175; we do not understand it to have decided that it would not exercise its discretion to rule on the merits of the case even if the requirements of that statute were met. Accordingly, we do not address the scope of a trial court's discretion to decide, in "appropriate" circumstances, to adjudicate a moot case.

165-007-0320—defendant continues to have a policy or practice of using three-character (or other shorthand) designations for political parties on ballots.

Nor does this case remain justiciable under ORS 14.175 by virtue of plaintiffs' assertion that what they have challenged is defendant's "present policy of insisting she can violate ORS 254.135(3) at will, combined with her practice of already having violated ORS 254.135(3) in 2010." The record includes no evidence that defendant has insisted that she can violate state elections law. We understand plaintiffs' argument to be based, instead, on their assertion that defendant has declined to "renounce" the possibility that she will ever use "abbreviations, acronyms or other symbols instead of party names" on election ballots. But a plaintiff cannot create a justiciable dispute under the Declaratory Judgment Act simply by asking an elected official whether he or she will renounce the possibility of adopting a particular rule, policy, or practice in the future, and then challenging the lawfulness of such a hypothetical rule, policy, or practice once an official has declined to commit that he or she will never adopt it. That kind of setup does not create a "policy or practice" that "continues in effect" for purposes of ORS 14.175(2).

Second, plaintiffs have not challenged an act that is "capable of repetition" for purposes of ORS 14.175(2). Although *Couey* did not construe that statutory term, its approach to interpreting a different phrase in the statute— "likely to evade judicial review"—is informative. In undertaking that statutory-construction task, the court looked to the "settled case law concerning the capable of repetition exception," which the legislature "borrowed and codified" when it adopted ORS 14.175. *Couey*, 357 Or at 480, 483. We similarly look to that case law in determining what it means for an act to be "capable of repetition" as that phrase is used in ORS 14.175(2). Those cases consistently hold that an act will be deemed "capable of repetition" only if there is a "reasonable expectation" or a "demonstrated probability" that the challenged act, or a similar act, will recur. *Federal Election Commission v. Wisconsin Right to Life, Inc.*, 551 US 449, 463, 127 S Ct 2652, 168 L Ed 2d 329 (2007) (quoting cases); *Johnson v. SAIF*, 202 Or App 264, 300, 122 P3d 66

(2005), *adhered to on recons*, 205 Or App 41 (2006), *aff'd*, 343 Or 139 (2007) (federal "capable of repetition, yet evading review" exception applies "only when there is a showing of a reasonable likelihood that the same claim involving the same parties will arise again"). Here, plaintiffs have not identified evidence suggesting that there is *any* likelihood that defendant will take action in the future similar to the past action that plaintiffs challenged: her adoption of an administrative rule specifying that political parties would be identified by three-character designations on general election ballots. Accordingly, plaintiffs have not established that the challenged act is one that is "capable of repetition" for purposes of ORS 14.175(2).

Affirmed.